A96A2370. FLANAGAN v. THE STATE.
(480 SE2d 299)

MCMURRAY, Presiding Judge.

Defendant was convicted of child molestation following a jury trial at which he represented himself. The trial court denied defend-

ant's motion for new trial because defendant failed to qualify for a court-appointed attorney under the county's indigency standard. This judgment was disapproved in *Flanagan v. State*, 218 Ga. App. 598 (462 SE2d 469), and the case was remanded for the trial court to exercise discretion in determining whether defendant (an "almost" illiterate chicken coop builder) was fairly compelled to trial without an attorney. To assist this determination, this Court directed the trial court to consider factors such as defendant's diligence in obtaining an attorney's services, defendant's purported illiteracy and the trial court's power to appoint counsel and order defendant to reimburse the county for the cost of any such appointment. Id. at 600-601. This Court also observed that a "review of the record, particularly defendant's colloquy with the [trial court] immediately prior to his trial, [makes] it . . . clear that defendant preferred to have an attorney and only 'chose' to represent himself because he could not afford one." Id.

After conducting a hearing upon remand, the trial court entered the following findings of fact and conclusions of law: "Reasonable diligence in attempting to employ counsel is one circumstance to be evaluated. On this issue the court finds that the defendant (or members of this family) contacted several attorneys and obtained fee quotes after the defendant was denied appointment of counsel because of his income. The defendant did not have cash on hand (or property readily convertible to cash) to pay the entire fee of any fee quoted. The defendant sought to borrow money from his employer about a month before trial (who agreed to loan him $1,200.00). The defendant did not ask for a larger loan because he says he knew his employer would not loan him any more. He attempted to borrow money from family members who had no money to loan him. He did not attempt to borrow money from friends, a bank or other commercial lender.

"The court has no evidence before it from which it may be concluded that the defendant could not have obtained a loan sufficient to pay an attorney's fee if he had made the effort. There is no evidence of efforts to obtain a loan from friends, or that there were no friends to ask. There is no evidence that the defendant asked his employer for any more than the original $1,200.00 he loaned when it was thought that amount would retain an attorney. In fact, the evidence is that no such an attempt was made, with the defendant guessing as to the probable outcome. There is no evidence of any attempt to borrow from a commercial lender. While it is likely some lenders would have required collateral (which the defendant did not have), some lenders may not have. The court simply cannot assume the defendant would have been unsuccessful in obtaining a loan if he had made the effort to do so.

"The court now turns to the issue of the defendant's eighth-grade

education, specifically the effect of his limited ability to read and write on the exercise of the court's discretion to appoint or not appoint counsel. Clearly, one with an eighth-grade education will rarely conduct a defense of himself in a criminal case as effectively as a lawyer could. In most instances, the same thing can be said with one with a high school education, or even a college degree. But, it is not one's ability to act in their own behalf in a criminal prosecution that is at issue here. At issue is whether the defendant's inability to obtain counsel is due to special circumstances. Specifically, [Uniform Superior Court Rule] 29.5 provides in part: '(t)he court may appoint counsel for representation of any accused person who is unable to obtain counsel due to special circumstances such as emergency, hardship, or documented refusal of the case by members of the private bar because of financial inability to pay for counsel.'

"The defendant failed to exercise reasonable diligence in attempting to employ counsel. Should he be excused, or should a lower standard be applied because of the defendant's limited ability to read and write? The *amicus curiae* brief . . . describes well some of the difficulties an illiterate person would have in successfully working their way through the criminal justice system. But again, the issue before the court is more narrow than that. It is whether the defendant's limited formal education caused or materially contributed to his inability to obtain counsel. On this issue there is no evidence that the defendant's failure to ask his employer for a further loan, to ask friends for a loan, or to apply for a loan with a business engaged in making loans was caused by his limited education or that his limited education materially contributed to his failure to do any of those things. Again, the court cannot simply make assumptions not supported by the evidence."

This appeal followed the denial of defendant's motion for new trial. *Held*:

Article I, Section I, Paragraph XIV of the 1983 Georgia Constitution provides that "[e]very person charged with an offense against the laws of this state shall have the privilege and benefit of counsel. . . ." And while a non-indigent defendant may forfeit this right by failing to act with reasonable diligence in obtaining an attorney's services, *Hasty v. State*, 215 Ga. App. 155, 156 (1), 157 (450 SE2d 278), the trial court must exercise discretion in resolving the "reasonable diligence" issue by considering all factors which militate for or against the appointment of counsel — including the fairness of forcing a low income illiterate to trial without an attorney in light of the trial court's power to appoint counsel and require the non-indigent to reimburse the county for any such representation. *Flanagan v. State*, 218 Ga. App. 598, 600-601, supra. Of course, the trial court's judgment in such matters is reversible only upon a manifest abuse of dis-

cretion. See *Shaw v. State*, 251 Ga. 109, 111 (303 SE2d 448), and *Hasty v. State*, 215 Ga. App. 155, 156 (1), supra.

As recognized in the opinion resulting from the first appearance of the case sub judice in this Court, defendant earned a gross monthly income before trial of $1,169 and defendant and his family contacted several attorneys before trial and discovered that none would represent him at trial for less than $5,000. *Flanagan v. State*, 218 Ga. App. 598, 599, supra. Further, the trial court's findings of fact and conclusions of law recognize that defendant had no assets before trial; that defendant's employer loaned him $1,200 before trial — a little over a month's wages; that defendant's family had no money to loan and that defendant has an eighth grade education and limited reading and writing abilities. Moreover, defendant testified at the motion for new trial hearing conducted after remand of this case to the trial court that one attorney refused to extend him credit even though defendant presented this attorney with a $1,200 down payment. Nonetheless, the trial court concluded — based on a silent record — that defendant could have raised the extra $3,800 he needed to hire an attorney had he asked to borrow the money from his employer, a friend or a lender. We find this judgment speculative and not in line with the reality of defendant's circumstances.

Although it is undisputed that defendant's employer had already advanced defendant more than a month's wages ($1,200), defendant testified that his relationship with his employer was not such that he could successfully obtain an additional $3,800 advance on his wages. We find defendant's estimation of his employer's generosity plausible in light of the fact that defendant would have been asking for an aggregate loan well over four times defendant's gross monthly income near the eve of a trial which threatened defendant's future ability to work. (That is, defendant faced long-term incarceration if convicted.) Further, there is no proof that defendant had any friends to help him before trial, much less a friend with $3,800. And evidence of defendant's relatively low educational and economic standing in the community, along with a lack of proof regarding defendant's ability to persuade or coerce others to loan him $3,800, indicated little hope of defendant's ability to raise such revenue before trial. Finally, it appears that no responsible lender would extend a $3,800 attorney fee loan to an individual with a credit handicap such as defendant — an "almost" illiterate chicken coop builder who owed his employer $1,200, owned or had access to no collateral, had a gross income of less than $295 per week and faced felony charges which diminished the prospects of defendant's future ability to produce income.

The circumstances in the case sub judice — including the trial court's failure to consider its power to order defendant to reimburse the county for the cost of a court-appointed attorney — persuades us

that the trial court not only manifestly abused its discretion in finding that defendant failed to act reasonably in attempting to raise the money required to retain an attorney, the evidence adduced at the motion for new trial hearing conducted after the first appearance of this case in the Court of Appeals does nothing to change the view enunciated in *Flanagan v. State*, 218 Ga. App. 598, supra, "that defendant preferred to have an attorney and only 'chose' to represent himself because he could not afford one." *Id.* at 600. Consequently, the trial court erred in denying defendant's motion for new trial.

*Judgment reversed. Johnson and Ruffin, JJ., concur.*

DECIDED JANUARY 16, 1997.

*Valpey & Walker, Gregory W. Valpey,* for appellant.
*Lydia J. Sartain, District Attorney,* for appellee.
*Chambliss & Bahner, T. Maxfield Bahner,* amicus curiae.